[No. 28424. Department One. May 22, 1942.]

GERTRUDE E. CORNWALL, *Appellant,* v. G. A. CORNWALL, *Respondent.*[1]

*Dave Hammack* and *James R. Hammack,* for appellant.

*James G. Smith* and *Boynton Kamb,* for respondent.

DRIVER, J.—Plaintiff and defendant were married in Seattle in 1912, and, in 1920, moved to LaConner, where they have since resided. Defendant was the manager of a local bank and retained the position when it became a branch of a Seattle bank. The parties have a daughter and a son, both of legal age and in their twenties. Respondent is fifty-two years old, and appellant is two or three years younger.

In 1933, plaintiff sued her husband for divorce, and an interlocutory order was entered, but, after about a year and a half, they resumed their marital relations

[1]Reported in 126 P. (2d) 52.

and the action was abandoned. Plaintiff started the case at bar, as an action for separate maintenance, in November, 1938. Defendant cross-complained for dissolution of the marriage, and, in October, 1940, plaintiff filed an amended complaint in which she also asked for an absolute divorce. Defendant again cross-complained, and the trial court entered findings, conclusions, and interlocutory order adjudging both parties entitled to a divorce and providing for the division of their property.

The plaintiff has appealed. She asserts that the trial court erred (1) in granting a divorce to the defendant; and (2) in making her an inequitable award of property and alimony.

■ Appellant's first assignment of error is not of much practical importance, since that portion of the interlocutory order which allows her a divorce is not challenged and, in any event, must stand. As we stated in *Kirsch v. Kirsch*, 192 Wash. 156, 158, 73 P. (2d) 356:

"The appellant desired a divorce. If a decree of divorce was granted in favor of one of the spouses, both are thereby necessarily divorced. If we concluded, as we can not on the record before us, that the court erroneously declared the appellant guilty of cruelty but correctly found that the respondent was guilty of cruelty, the result would not for that reason be changed."

It would serve no useful purpose to detail the conflicting evidence upon which the trial court concluded, as its findings of fact indicate, that, while the husband was more to blame than the wife for the wreck of their marital venture, both were somewhat at fault, and that each of them was entitled to a divorce. The evidence supports the court's findings. It is clear from the record that it had become impossible for the parties

to continue to live together as husband and wife. In fact, they finally arrived at such a state of mutual misunderstanding and intolerance that they lived in the same house from the first of January to the fore part of June, 1938, without speaking to each other. The respondent then moved to a separate establishment, and they have not lived together since.

Passing to appellant's second assignment of error, the distribution of the property (it was practically all community property) posed an unusually difficult problem for the trial court. Respondent's salary was $275 a month, or $3,300 a year. He testified that his net income from other sources amounted to an additional $400 a year. He had accumulated considerable real and personal property, but much of it was heavily encumbered, and he had incurred a staggering aggregate indebtedness. In the course of the trial, the court voiced its perplexity in the following colloquy with appellant and her attorney:

"THE COURT: I notice in the prayer of your Complaint that you are asking the court to make an equitable distribution of this property—the community property. What do you consider, yourself, as an equitable distribution of the property under the circumstances of this indebtedness that exists? A. To tell you the truth, I really do not know. It certainly is a tremendous problem. I don't know just what to say. MR. HAMMACK: That is one of the things we are going to have to argue about. It is a difficult problem, I think we will all concede that."

The trial court endeavored to solve this "difficult problem" by its interlocutory order (supplemented by a later order disposing of some inadvertently omitted property). It allowed appellant $55 a month as alimony, and awarded her the following property: The dwelling house in which she has been residing in LaConner and five other parcels of unencumbered,

income producing real property; a four-acre tract of land in King county, which respondent valued at $750; all the household goods and furnishings in the house in which she resides, and a 1936.Ford sedan. The value of all the real property, other than the King county parcel, according to the estimates of appellant's expert witness, a deputy county treasurer, was $4,400; but respondent's expert, a real estate broker, testified that its value was $7,325. The rentals from the income producing real property totaled about $65 a month.

The trial court gave respondent an automobile, stocks and bonds, and other personal property, a farm, live stock and machinery, a real estate contract, an apartment house containing four apartments, some small dwelling houses, and a small garage. The court made no finding as to the value of any of the property, but the record justifies the conclusion that the items awarded to respondent, as stated, were of the approximate value of $31,000. Respondent was also permitted to retain twenty-five shares of the common stock of the Cornwall Fuel Company, of Seattle, which he had acquired by inheritance. There is no evidence of its value, but respondent stated that it had never paid a dividend. And the court gave respondent his life insurance, in the total amount of $7,500. However, he testified that only $2,500 of it had any cash surrender value, and that had only "a small cash value, I don't know how much." The total indebtedness which respondent had to assume, including the encumbrances against the property turned over to him, was, according to his testimony, about $31,200, and his interest payments thereon amounted to approximately $110 a month. Respondent's testimony with reference to the matters just mentioned, was not disputed.

Rem. Rev. Stat., § 989 [P. C. § 7508], provides that, in granting a divorce, the trial court shall justly and

equitably divide the property involved, having regard to the respective merits of the parties, the conditions in which they will be left by the divorce, and to the party through whom the property was acquired. This statute gives the trial court wide discretion in providing for the disposition of community property. *Kirsch v. Kirsch, supra.*

Considering the fact that the indebtedness which respondent has had to take over approximately equals the value of all the property awarded him by the interlocutory order, we are unable to say that the trial court has abused its discretion in dividing the property of the parties.

Judgment affirmed.

ROBINSON, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.