[No. 28825. Department Two. November 24, 1942.]

RENEX GORDON FINT, *Respondent*, v. REBA PAULINE FINT, *Appellant*.[1]

*John M. Wilson* and *John D. Carmody*, for appellant.

*Wm. J. Conniff* and *Stanley A. Taylor*, for respondent.

BEALS, J.—Renex Gordon Fint and Reba Pauline Pearce were married in Clallam county, May 4, 1938. They have one child, Sandra Lee, who was born February 15, 1939. During the month of November, 1940,

[1] Reported in 131 P. (2d) 426.

Mr. Fint brought suit for divorce, based upon cruel treatment, stated in very general terms, alleging that Mrs. Fint had lost all affection for him, and without cause or provocation had so conducted herself toward plaintiff as to render it impossible for the parties longer to live together. The complaint further alleged that the defendant had resided in Port Angeles with her parents since June 1, 1940. Plaintiff prayed for a decree of divorce, and that he be awarded custody of his minor child.

November 6, 1941, Mrs. Fint filed her amended answer and cross-complaint, denying the material allegations of plaintiff's complaint, and affirmatively alleging that her husband had treated her with indifference, and had urged her to leave him and go home to her parents. She also alleged that it was impossible for the parties longer to live together as husband and wife, and asked that she be awarded a divorce, together with the custody of her child and an allowance for the child's support.

Plaintiff having denied the material allegations of defendant's cross-complaint, the action proceeded to trial. What the result of this hearing was we do not know, but it appears from the record that the court granted Mrs. Fint's motion for a new trial, and that the cause came on for a second hearing March 5, 1942. Testimony probably beyond the issues as framed by the pleadings was admitted without objection. After finding the facts of the marriage and the birth of the child, the court found that Mr. Fint was a soldier in the United States army, stationed at Fort Worden; that the child, Sandra Lee, was residing in the home of Mr. Fint's parents (in Port Angeles), and was being well cared for. The court then found that Mrs. Fint was not a proper person to have the custody and control of the child, and that it would not be for the best interests of the child to be placed in her mother's cus-

tody; that Mr. Fint was a proper person to have custody of his child, and that the best interests of the child would be served by awarding her to her father's custody. The court also found that both plaintiff and defendant had been "guilty of cruel treatment one to the other and of personal indignities rendering life burdensome, and are no longer able to live together."

The court concluded that each of the parties was entitled to a divorce; that the custody of the minor child should be awarded to Mr. Fint, subject to further order of the court; that a division of the personal property made by the parties should be confirmed; that an insurance policy should be awarded to Mrs. Fint; and that each party should pay his own costs. An interlocutory order was then entered in accordance with the findings and conclusions, from which order Mrs. Fint has appealed.

Error is assigned upon the granting of a divorce to either party, upon the court's finding that appellant is not a proper person to have custody of her daughter, and upon that portion of the interlocutory order awarding the custody of the child to respondent.

It appears from the record, and the court found, that during the month of August, 1939, appellant was adjudged mentally incompetent and committed to the Northern State Hospital; that she was paroled from that institution during the month of April, 1940, at which time she took up her residence with respondent, where she remained until June 1, 1940, when she left respondent and took up her residence with her parents in Port Angeles; that September 26, 1940, appellant was discharged from the hospital as recovered. The trial court also found:

"That in addition to the mental illness of the defendant as indicated above there have been at least two other members (now deceased) of the defendant's

immediate family who suffered during their lifetimes from mental illness. That these persons were sisters of the defendant. That the type of mental illness from which the defendant suffered is of a recurring nature.

"That the plaintiff is at the present time serving with the United States army, and is now situated at Fort Worden. That the child of the parties is being cared for by the parents of the plaintiff and is residing in their home. That said child is receiving the best of care and treatment.

"That the defendant is not a proper person to have the custody and control of the minor child of the plaintiff and the defendant and it would not be for the best interests of said child to be placed in the custody and control of the defendant. That the plaintiff is a proper party to have the custody and control of said child and the best interests of said child would be served by placing her in the care, custody and control of the plaintiff herein."

In its finding to the effect that the parties had been guilty of cruel treatment each of the other, the court limited the finding to times prior to appellant's commitment to the hospital and after her release therefrom.

■ Notwithstanding the fact that appellant filed a cross-complaint asking for a divorce, went to trial upon this cross-complaint, and procured an interlocutory order of divorce based in part thereon, she has appealed from that portion of the interlocutory order granting her a divorce (and also granting a divorce to respondent), and contends before this court that the record contains no evidence which supports the granting of a divorce to either party.

The general rule is stated in 27 C. J. S. 859, § 194 (b), title "Divorce," as follows:

"*Estoppel to allege error* is governed by the general rules relating thereto. Thus one who successfully invokes the jurisdiction of the court in a divorce proceeding is estopped from questioning its jurisdiction

on appeal; nor can a party complain of action of the trial court taken at his own instance. So one who has prayed for divorce cannot complain of that portion of the decree which grants it to him."

This court, in the case of *Schirmer v. Schirmer*, 84 Wash. 1, 145 Pac. 981, held that a decree of divorce granted to both parties would not be reversed on appeal, even though it might be held that the evidence did not support a decree in favor of one of the parties. The cases of *Kirsch v. Kirsch*, 192 Wash. 156, 73 P. (2d) 356, and *Cornwall v. Cornwall*, 13 Wn. (2d) 594, 126 P. (2d) 52, are to the same effect.

In support of her argument, appellant cites the case of *Davis v. Davis*, 3 Wn. (2d) 448, 101 P. (2d) 313, in which this court reversed an order annulling a marriage, the order having been entered pursuant to a stipulation of the parties, the findings stating that the parties had orally stipulated and agreed in open court that a decree of annulment should be entered. The case was presented to this court for review upon the pleadings and findings, no bill of exceptions or statement of facts being presented. This court held that an order of annulment could not be entered on stipulation of the parties only, and that the finding above referred to did not support the order appealed from, which was accordingly reversed.

Appellant also relies upon the case of *Shaw v. Shaw*, 148 Wash. 622, 269 Pac. 804. In that case, it appeared that the husband sued the wife for divorce, the wife resisting the application for divorce and asking for a decree awarding her separate maintenance. It appeared that the wife had been mentally afflicted, and had been four times confined in a hospital for the insane, from which, however, she had been discharged as recovered. It does not appear that the wife ever changed her position in resisting the action for divorce

and asking for separate maintenance. The trial court granted the husband's application for a divorce, and awarded the minor children to him. On appeal, this court reversed the interlocutory order granting a divorce, and remanded the case for the purpose of considering the question of separate maintenance to the wife and the care and custody of the children. The case is not controlling, as in the case at bar both parties asked for a divorce, and the trial court, after two hearings, awarded a divorce to both parties. Apparently, appellant changed her mind as to the desirability of a divorce decree only after the entry of the interlocutory order. No showing is made that appellant was anywise imposed upon or misled, or that in asking for a divorce she was acting otherwise than upon her own well considered judgment, aided by such advice as she may have sought from her parents, her counsel, or any other person with whom she may have desired to discuss the matter.

In the case at bar, we have before us a complete statement of facts, and, while the findings of the trial court do not recite specific instances of cruelty, the record amply supports the entry of an interlocutory order of divorce based upon cruel treatment. It is unnecessary to analyze this evidence or to determine whether or not the trial court properly awarded a divorce to both parties on their respective pleadings praying for that relief.

We are not impressed with appellant's contention that she may, after asking for a divorce and accepting an order granting a divorce, now appeal from that order and contend that the evidence introduced does not support the order.

In any event, we hold that the evidence does support the order, and that the same, in so far as it granted a divorce to both parties, confirmed the division

of the personal property as made by the parties themselves, and awarded the policy of life insurance to appellant, should be affirmed.

A much more difficult question is presented by that portion of the interlocutory order which awarded custody of the child, Sandra Lee, to the respondent. Several physicians, some of whom have specialized in the treatment of mental disorders, gave testimony which is before the court. Three psychiatrists testified by deposition, Dr. Rickles for respondent, and Drs. Hoedemaker and Doughty for appellant. Dr. Rickles never saw appellant, while Dr. Hoedemaker had met and examined her, and Dr. Doughty, the physician in charge of the Northern State Hospital, knew appellant, and had examined her while she was a patient in that institution. Two physicians practicing in Port Angeles testified, one for respondent and the other for appellant. Appellant's employer testified in her behalf, stating that appellant had been in his employ for the past ten months as a stenographer and file clerk. The witness stated that appellant's work was satisfactory; that she was regular in attendance at the office; that she attended to considerable correspondence; and that her work was steadily improving.

During the trial, the trial court expressed the opinion that, as to the custody of the child, the entire matter depended upon appellant's mental condition. The court, referring to appellant, stated: "She has good parents, she is a good girl herself. The mental issue is the whole thing." From the record it clearly appears that appellant and her parents, and respondent and his parents, are all good, substantial citizens.

It must be admitted that appellant and two of her sisters have suffered mental illnesses, and that the type of appellant's mental affliction suggests that she may

suffer from recurrence of the trouble. Apparently, however, up to the time of trial she, for ten months, had been filling a responsible position as stenographer and clerk, to the entire satisfaction of her employer. Some of the physicians testified that responsibility might be bad for appellant, while another physician testified that having a portion of the responsibility for the care of her child placed upon her might well be beneficial, and be less likely to cause recurrence of the mental trouble than the continued thought that her child had been taken away from her and was living with respondent's parents. Appellant's mother stated that she was willing to take care of the child while her daughter was working, and it is not suggested that appellant's parents would not give the little girl an excellent home.

On the other hand, respondent's mother testified that she and her husband would be glad to have the child, and the trial court was doubtless impressed, as we are, with the testimony of the child's paternal grandmother, who is apparently willing to unselfishly devote her time to the care of her little granddaughter. Of course, respondent, a soldier in the United States army, while at the time of trial stationed not far from Port Angeles, was subject to orders, and in any event could take no active part in the care and training of his child.

The question of the custody of little Sandra Lee is one of great difficulty. While the welfare of the child is the paramount consideration, the right of a parent must also be considered. For the present at least, the child must either remain with her father's parents or be with her mother and her maternal grandparents. This case differs from several cases in which we have recently determined the custody of minor children (*Eliason v. Eliason*, 10 Wn. (2d) 719, 118 P. (2d) 170; *Taylor v. Taylor*, 14 Wn. (2d) 293, 126 P. (2d) 855;

*Lichtenberg v. Lichtenberg, ante* p. 226, 130 P. (2d) 371) in which cases it appeared that the mother, by her conduct, had subjected herself to serious criticism. In the case at bar, the record contains not one word which justly reflects upon appellant's conduct.

While we are very loath to reverse an order of the trial court in such a matter as this, we feel that, under the circumstances, appellant, as mother of the child of the parties, showed that, for the present at least, she is entitled to the custody of her daughter.

The order appealed from will be modified by striking therefrom the paragraph awarding the care and custody of Sandra Lee Fint to respondent, and the cause will be remanded, with instructions to award the custody of the child to appellant, Reba Pauline Fint, the child to remain in the home of appellant's parents, respondent and his parents to have the right at all reasonable times to see the child and have the child visit them under reasonable conditions; the matter to remain always subject to the further order of the court.

ROBINSON, C. J., BLAKE, SIMPSON, and DRIVER, JJ., concur.